714 P.2d 62

Judee Lynn THOMPSON, Natural
Mother-Appellant,

v.

Jean THOMPSON,
Petitioner-Respondent,

and

Patrick J. Kole, Guardian ad Litem,
Petitioner-Respondent.

No. 15171.

Court of Appeals of Idaho.

Jan. 17, 1986.

Andrew C. Thomas, Caldwell, for natural mother-appellant.

Debra Ann Heise, on appeal; Wayne Fuller, Caldwell, for petitioner-respondent, Jean Thompson, on rehearing.

Patrick J. Kole, Boise, guardian ad litem, pro se.

SWANSTROM, Judge.

The parental rights of Judee Thompson to her child were terminated after hearings in the magistrate division. She appealed to the district court, where the order of termination was affirmed. Judee appealed again, asserting that the district court erred in holding there was substantial and competent evidence to support the magistrate's ruling. We affirm the district court's order.

The child was born in June, 1979. Judee, who was seventeen at the time, has never revealed the identity of the child's father. Starting in mid-November, 1979, Judee left the child in the custody of Judee's mother, Jean Thompson. Because Jean was working steadily as a nurse, she employed Sandy Asperi as a baby-sitter. Before long Jean turned the full time care of the child over to Robert and Sandy Asperi in March, 1980. About that same time, Judee and a

friend appeared at Jean's house and demanded that the child be returned to her. The confrontation was unpleasant and the police were summoned. The child remained with Jean.

On May 6, 1980, Jean filed a petition to be appointed guardian of the person of the child, alleging that Judee's conduct toward the child constituted neglect and abandonment. A temporary order granting legal custody of the child to Jean was entered the same day. However, when the petition was to be heard three weeks later, the temporary custody order was quashed without objection from Jean, and the hearing was postponed. Following this court appearance, Jean maintained custody of the child although the child was cared for by the Asperis except for a brief interval in October, 1980, when Judee took the child and left for California with a boyfriend. Ten days after they left Idaho, Judee telephoned her mother because she feared for the child's safety. Judee's boyfriend had been physically abusive to her and she was afraid the child might also be attacked. Jean and Sandy Asperi drove to California and returned with Judee and the child. Upon their return, Judee voluntarily relinquished the child to the full time care of the Asperis.

In January, 1981, a guardian ad litem was appointed for the child and a hearing was held to determine temporary legal custody. After taking testimony, the court awarded temporary custody to Jean but granted visitation rights to Judee. In April and again in July the "temporary" order was extended to continue the temporary guardianship and custody of the child in Jean.

In September a hearing was held at which time Judee stipulated that guardianship of the child could be in Jean, subject to review within six months. The actual custody of the child would remain with Robert and Sandy Asperi. During this hearing the magistrate took evidence to determine whether and to what extent Judee would have visitation rights. At the conclusion of the hearing, the court ordered that Judee be permitted unsupervised visitation with the child on Fridays of each week for a few hours. The record indicates Judee exercised her visitation rights fairly regularly.

A hearing for review of the guardianship order was scheduled for April 21, 1982. Prior to that date, two petitions for termination of parental rights, one by the guardian ad litem and one by Jean, were filed. These petitions then became the subject of the hearing held on April 21 and April 28, resulting in the magistrate's order terminating Judee's parental rights on the basis of neglect.

Idaho Code § 16–2005 provides six grounds for terminating parental rights. Section 16–2009 now requires that at least one of the grounds be proved by clear and convincing evidence. Even though this requirement was not a part of the statute until 1983, parental rights could not be terminated on a lesser standard because of due process requirements of the United States Constitution. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The parties stipulated in the magistrate division that the "clear and convincing" standard should prevail. The petitioners alleged that cause to terminate existed on three grounds—abandonment, neglect and abuse. The magistrate concluded that the evidence supported a finding that Judee had neglected the child, and her parental rights were terminated on that basis.

Neglect means "a situation in which the child lacks parental care necessary for his health, morals and well-being." I.C. § 16-2005(b). Judee urges on appeal that her responsibility to provide parental care should be measured in terms of a non-custodial parent. She asserts that her conduct as a non-custodial parent does not amount to neglect, even though it might were she a custodial parent, because the non-custodial status limits her responsibilities as well as her rights to the child.

■ The Idaho Supreme Court has held that the question of neglect is one of fact. *See In Interest of Holt,* 102 Idaho 44, 625 P.2d 398 (1981). The Court stated in *Holt* and in other cases decided before *Santosky*

that, in proceedings involving the termination of a parent-child relationship, findings of the trier of fact will not be disturbed on appeal where there is competent and substantial evidence to support them. *E.g., Interest of Castro,* 102 Idaho 218, 628 P.2d 1052 (1981); *In the Matter of Matthews,* 97 Idaho 99, 540 P.2d 284 (1975). Our Supreme Court has continued to adhere to the "substantial and competent" standard on appeal even after *Santosky. Rhodes v. State of Idaho,* 107 Idaho 1120, 695 P.2d 1259 (1985). Application of the competent and substantial evidence standard on appeal to facts established by clear and convincing evidence at the trial level was explained in *Jensen v. Bledsoe,* 100 Idaho 84, 593 P.2d 988 (1979). Essentially, if the trier of fact in a termination proceeding finds neglect as defined by the statute to be established by clear and convincing evidence, those findings will not be reversed unless they are clearly erroneous, *i.e.,* they are not supported by substantial and competent evidence. *Rhodes v. State of Idaho, supra,* (J. Bistline specially concurring); *Jensen v. Bledsoe, supra. See also Jolley v. Clay,* 103 Idaho 171, 646 P.2d 413 (1982); *Jones v. Adams,* 67 Idaho 402, 182 P.2d 963 (1947); *Andrews v. Aikens,* 44 Idaho 797, 260 P. 423 (1927); *Bedal v. Johnson,* 37 Idaho 359, 218 P. 641 (1923).

On rehearing, Judee asks us to abandon the clearly erroneous standard for an independent review of the record or a stricter standard of review. Judee urges this higher standard given her fundamental liberty interest as a natural parent in the care, custody and management of her child. *Santosky v. Kramer, supra.* In some cases, constitutionally protected interests, such as freedom of speech, have been held to require an appellate court to conduct free review of the constitutionally significant facts. *See Bose v. Consumers Union,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984); *Jacobellis v. Ohio,* 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964). However, *Santosky* does not mandate an appellate court to make an independent review of the record in a parental termination case.

Appellate courts in several jurisdictions have chosen to review the record *de novo. See In Interest of J.R.H. and M.J.H.,* 358 N.W.2d 311 (Iowa 1984); *In the Matter of T.C.M.,* 651 S.W.2d 525 (Mo.Ct.App.1983) (findings of trial court not supported by clear, cogent and convincing evidence); *Schneider v. S.L.M.,* 347 N.W.2d 126 (N.D. 1984); *In Re Sims,* 13 Ohio App.3d 37, 468 N.E.2d 111 (1983) (substantial justice was not done); *State ex rel Juv. Dept. v. Herman,* 69 Or.App. 705, 687 P.2d 812 (1984); *In Re Donna W. and Edward W.,* 325 Pa.Super. 39, 472 A.2d 635 (1984) (return of child to parent's custody requires broad scope of review where appellate court could draw its own inferences and deductions from the facts as the trial court found them); *Matter of SKJ,* 673 P.2d 640 (Wyo. 1983) (considers evidence with "strict scrutiny"). However, a number of other jurisdictions, like Idaho, have continued to apply a less stringent standard of review. *See Nada A. v. State of Alaska,* 660 P.2d 436 (Alaska 1983) (findings upheld unless court is left with a definite and firm conviction of the entire record that a mistake has been made, although there may be evidence to support the finding); *Matter of Maricopa County Juvenile Action,* 137 Ariz. 19, 667 P.2d 1345 (App.1983); *Thompson v. Arkansas Social Services,* 282 Ark. 369, 669 S.W.2d 878 (1984); *In Re Juvenile Appeal,* 3 Conn. App. 194, 485 A.2d 1369 (1985); *Woodruff v. Keale,* 64 Hawaii 85, 637 P.2d 760 (1981) (state required clear and convincing standard for termination before *Santosky* ); *In Re Daniel C.,* 480 A.2d 766 (Me.1984); *Custody of A Minor (No. 1),* 391 Mass. 572, 463 N.E.2d 324 (1984) (statute eliminated appellate court's right to hear case de novo); *In the Matter of Welfare of A.K.K.,* 356 N.W.2d 337 (Mn.Ct.App.1984) (standard of review is whether the court's findings are supported by substantial evidence and are not clearly erroneous); *In the Interest of M.J.B. Jr.,* 364 N.W.2d 921 (S.D.1985); *In Interest of Baby Girl K.,* 113 Wis.2d 429, 335 N.W.2d 846 (1983) (a trial court's finding of fact will not be set

aside unless against the great weight and clear preponderance of the evidence).

■ We choose to adhere to the "clearly erroneous" standard of review in child termination cases. The finder of fact has the opportunity to observe the witnesses' demeanor, to assess their credibility, to detect prejudice or motive and to judge the character of the parties. In a parental-termination case, this is immensely important. A cold record of the trial does not tell the whole story. *Matter of SKJ, supra.* An independent review by our court could not take into account the trial court's superior view of the entire situation. *See* E. Clearly, McCORMICK ON EVIDENCE § 340 (3d ed. 1984). Therefore, we leave to the district court the task of determining whether clear and convincing evidence supports the termination of parental rights. Thus, our task on appeal in this case is to determine whether the trial judge's finding of neglect is clearly erroneous. As we explained in *Rasmussen v. Martin,* 104 Idaho 401, 659 P.2d 155 (Ct.App.1983), clear error will not be deemed to exist if the findings are supported by substantial and competent, albeit conflicting, evidence.

■ We believe substantial and competent evidence supports the trial court's finding of neglect in this case. The record indicates Judee has not exercised full-time care of the child since November, 1979, when the child was four and one-half months old. Nor has she, since that time, made any meaningful attempts to provide parental care necessary for the child's health, morals and well-being. She has simply relied upon the generosity of others. They have not neglected the child, but she has.

Further, the record indicates Judee lacks the emotional and mental capacity needed to provide parental care necessary for the child's health, morals and well-being. Throughout the litigation, the emotional and mental stability of Judee and her child were evaluated by various experts. These experts were in agreement that Judee suffers from "anti-social" character or personality disorder that manifests itself in extro-

verted, over-active and impulsive behavior. They also agreed that this disorder results in an inability to sustain, over time, jobs, marriage or a similar relationship. They were also of the opinion that the disorder is difficult to treat and is likely to continue unabated for decades. The experts unanimously recommended that the child not be returned to Judee on a full time basis. Considerable evidence supports the opinions of the experts concerning Judee's behavior and conduct over an extended period of time.

The experts disagreed as to whether Judee's visitation rights should be continued. One expert favored continuation of Judee's visitation rights with her child, another expert favored its termination. The other two experts testified that the conditions surrounding the visitations were important for consideration. One expert testified if visitation went smoothly, continued visitation would not be detrimental to the child; however, if the child suffered emotional disturbances, continued visitation would be detrimental. Additional testimony by the parties illustrated the instability of the visitation process. There were missed appointments, perpetual conflicts and confrontations between the parties. Evidence was also introduced showing the child had had a negative reaction to visits with Judee.

The magistrate made extensive findings which, in our view, fairly and accurately reflect the evidence of both the positive and negative aspects of Judee's parental behavior and capabilities. The circumstances constituting neglect have to be dealt with on a case by case basis and we would do no service to the parties or to the public by repeating details here. The evidence clearly shows that Judee has not acted, and likely will not act, responsibly either as a custodial or non-custodial parent. Her impulsive and detrimental associations have repeatedly been destructive of her parental responsibilities. She has avoided offers for training and education that would improve her parenting abilities, or that would help

her to contribute support for herself and her child. She has made no sustained effort to be employed. Without reciting further from the record, we believe substantial and competent evidence supports the magistrate's finding of neglect.

█ Nor are we persuaded that Judee's conduct toward the child should be evaluated solely in terms of a non-custodial parent. This is not a case where a parent has become non-custodial because of the acts or presence of another parent, as when there is a separation or divorce. Instead, the acts by which Judee initially became non-custodial, as well as her conduct thereafter, are the very acts constituting neglect. Further, the statute defines neglect as "a situation in which the child lacks *parental* care necessary for his health, morals and well-being." I.C. 16–2005(b) (emphasis added). We take this statute to mean that a parent is not relieved of his or her responsibility to provide appropriate parental care by informally relinquishing custody of a child to a relative or friend. We see no reason for narrowly interpreting Idaho's definition of neglect to benefit a non-custodial parent in this case. Clearly the record reflects Judee has been unable to provide appropriate parental care to her child. Here, the magistrate, having found neglect, considered alternatives to termination such as perpetuation of the guardianship or foster care. He concluded, however, that those alternatives would not be beneficial to the child's best interests, as "there is no reasonable circumstance under which the child's welfare would be served by the continuation of parental rights in the parent."

Because substantial and competent evidence supports the finding of neglect and the order terminating the parent-child relationship, we affirm the order of the district court. No costs or attorney fees awarded.

WALTERS, C.J., and BURNETT, J., concur.