719 P.2d 1220

**Frederick G. and Lydia HOFMEISTER, Petitioners-Respondents,**

v.

**Wanda BAUER, Respondent-Appellant.**

**No. 15584.**

Court of Appeals of Idaho.

May 30, 1986.

Christine Burdick (argued), (Hopkins, French, Crockett, Springer & Hoopes), and Craig W. Simpson (Simpson, Gardner & Gauchay), Idaho Falls, for respondent-appellant.

Thomas W. Clark (Clark & Clark), Pocatello, for petitioners-respondents.

BURNETT, Judge.

This appeal presents three issues concerning the termination of a parent-child relationship. First, we are asked to decide whether the law prohibits termination unless it would serve the best interests of both the parent and the child. Second, we are invited to reexamine the standard for appellate review of a finding that grounds for termination exist. Finally, we must determine whether the evidence in this case was sufficient to support a termination decree.

The children in this case are three girls, the oldest born on September 28, 1974. The other girls are twins born on October 24, 1976. They reside with their paternal aunt, Lydia (Chacon) Hofmeister, and her husband, Frederick Hofmeister. In August, 1983, when the children were eight and six years old, respectively, the Hofmeisters filed a petition to terminate the natural parents' rights and to adopt the children. The natural parents, who were divorced, responded separately to the petition. The father, Thane Chacon, signed a written consent to the proposed termination and adoption. However, the natural mother, Wanda (Chacon) Bauer, resisted the petition.

After a lengthy trial, the magistrate found that the natural mother had neglected the children within the meaning of I.C. § 16–2005(b). The magistrate entered a decree terminating the rights of both natural parents and he appointed the Hofmeisters as guardians, apparently deferring the question of adoption while the mother ap-

pealed the termination decree. The district court upheld the decree and the matter is now before us on the mother's second appeal. For reasons explained below, we affirm.

I

Both the magistrate and the district judge stated in their memorandum opinions that the children had been neglected and that termination would serve the best interests of the mother as well as the children. The mother now argues that the record fails to show how the loss of three children would benefit her. The Hofmeisters respond that the mother possesses a limited capacity to raise children; that she will retain custody of a fourth child—a boy born to a subsequent marriage—who is not a subject of these proceedings; and that she will be better off coping with the lesser demands of a single child. The courts below presumably adopted the Hofmeisters' view.

The notion that involuntary termination benefits the parent causes us some disquietude. Parenthood confers long-term benefits of comfort and support that ordinarily outweigh the immediate demands of child-rearing. Even a parent of limited capability may be aggrieved by the loss of these potential benefits. We cannot indulge in a facile assumption that a mother who neglects her children is better off without them.

But the underlying question is whether it is truly necessary that termination serve the parent's best interests. The Idaho termination statutes impose no such broad requirement. Idaho Code § 16–2005 authorizes termination, over a parent's objection, in any of five circumstances: (a) abandonment, (b) neglect or abuse, (c) lack of a biological relationship between the child and a presumptive parent, (d) mental incapacity of the parent, or (e) situations where "termination is found to be in the best interest of the parent and child." Category (e), a repository for unspecified parent-child problems, is distinct from the more specific categories that precede it. Category (e) stands alone in mandating that the parent's best interests be served by termination. The other categories, predicated upon particular conduct or status of the parent, do not impose this requirement. The categories are independent. Any of them is a sufficient ground for termination. Accordingly, we hold that termination for parental neglect under category (b) is not contingent upon a showing that the parent somehow will benefit.[1]

How, then, did the parties and the lower court judges in this case derive an impression that the mother's best interests were to be considered even though neglect had been found? The answer may lie in *State ex rel. Child v. Clouse*, 93 Idaho 893, 477 P.2d 834 (1970). There our Supreme Court upheld a decree terminating the relationship between a mother and four of her six living children. At several junctures in its opinion the Supreme Court referred to the best interests of parents. Our attention is drawn especially to the following passage: "[S]everance of the parent-child relationship should be avoided unless it is the only alternative found consistent with the best interests of the children *and the parents.*" *Id.* at 895, 477 P.2d at 836 (emphasis added).

The emphasized language must be read in the context of the Supreme Court's entire opinion. In *Clouse* termination was sought and granted under I.C. § 16–2005(e)

---

1. In contrast to the best interests of the parent, the best interests of the child must be considered when terminating the relationship under any provision of I.C. § 16–2005. This requirement is explicitly contained in category (e) and is implicitly embraced by the criteria of parental conduct or status in categories (a) through (d). It is conceivable, although unlikely, that grounds for termination could exist under categories (a) through (d) but that a court would refrain from terminating because the child's best interests would not be served. For example, the child might be deprived of a substantial future inheritance, or severing the parental relationship might subject the child to an unusual degree of permanent psychic trauma. As explained at footnote 2, *infra,* this balancing process is undertaken only when the court has made a threshold finding that one of the statutory grounds for termination exists.

—the residual category. Although mental impairment under category (d) initially had been alleged in the termination petition, that allegation eventually was withdrawn. The Supreme Court noted:

[The mother's rights] may be forfeited and lost, and her relationship with her children as a parent terminated [,] where the children are abandoned, neglected, abused, *or* the court finds that the best interest of the parent and child requires the termination of the relationship. I.C. § 16–2005. *In the case at bar the court terminated the parent-child relationship on the latter grounds.*

*Id.* at 896, 477 P.2d at 837 (emphasis added).

We think the *Clouse* opinion, taken as a whole, correctly reflects the structure of I.C. § 16–2005. The Supreme Court's references to the best interests of parents are appropriate to a case governed by category (e). They do not impose a restrictive judicial gloss upon all other categories in I.C. § 16–2005. This interpretation is consistent with the Supreme Court's recent observation, in *Rhodes v. State, Department of Health and Welfare*, 107 Idaho 1120, 695 P.2d 1259 (1985), that a parent-child relationship may be terminated upon a finding "that the parent has neglected or abused the child *or* that termination is found to be in the best interest of the parent and child." *Id.* at 1120, 695 P.2d at 1259 (emphasis added).

We conclude in the present case that it was unnecessary for the lower court judges to determine whether the mother's best interests would be served by termination. The mother's attack upon that decision furnishes no basis to disturb the termination decree.

II

Consequently, our focus is narrowed to the magistrate's finding, upheld by the district court, that the mother had neglected her children. Idaho Code § 16–2009 provides that findings on the grounds for termination must be made upon "clear and convincing" evidence. In this respect, the statute conforms to the constitutional requisite of substantive due process. In *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the United States Supreme Court described the "care, custody and management" of children as a "fundamental liberty interest" of the natural parents. *Id.* at 753, 102 S.Ct. at 1394; *see also Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). The *Santosky* Court held that this interest could be extinguished only by proving parental unfitness with clear and convincing evidence rather than with a mere preponderance of the evidence. The Court vacated a termination decree and remanded for further proceedings because the decree had been entered upon the less demanding evidentiary standard.

The instant case differs from *Santosky* in two respects. First, the trial judge in this case applied the standard of clear and convincing evidence, finding that it had been satisfied. Second, termination in this case was sought by private parties—the children's paternal aunt and uncle—rather than by a government agency. Accordingly, the questions before us are what standard of appellate review should be applied to a finding of parental neglect, and whether that standard is affected by the private or public nature of the party seeking termination.

Taking the second question first, we believe the standard does not depend upon the identity of the petitioner. A standard of proof reflects the weight ascribed to competing interests, and it embodies a societal judgment about how the risk of fact-finding error should be allocated. We acknowledge that *Santosky* refers to "government-initiated proceedings" and to the "array of public resources" a government agency can muster "to prove its case...." 455 U.S. at 756, 760, 102 S.Ct. at 1396, 1398. However, we think the dominant reason for insisting upon clear and convincing evidence is the fundamental importance accorded to the parents' liberty interest in child-rearing. That interest re-

mains the same regardless of the identity of the party seeking to terminate it. We see no reason why the parental interest should receive less protection from the risk of fact-finding error in a "private" termination case than in a "public" case. *Accord, Thompson v. Thompson,* 110 Idaho 93, 714 P.2d 62 (Ct.App.1986).

The other question—what review standard should be employed on appeal—has been answered in earlier decisions. In *Rhodes v. State, Department of Health and Welfare, supra,* the Idaho Supreme Court applied the common standard of clear error under I.R.C.P. 52(a). The Court held that if a magistrate has found neglect upon what he considers clear and convincing evidence, and if the evidence indeed is substantial, his finding will not be deemed clearly erroneous. We announced similar holdings in *Thompson v. Thompson, supra,* and in *State, Department of Health and Welfare v. Cheatwood,* 108 Idaho 218, 697 P.2d 1232 (Ct.App.1985).

Counsel for the mother in this case has urged us to reconsider those decisions. She contends that *Santosky's* enhanced protection of parental interests against fact-finding error is defeated by appellate review employing in termination cases the same standard—substantial evidence—that would apply to cases where proof need only be by a preponderance of the evidence. This argument is attractive in some respects. Appellate courts in other jurisdictions occasionally have taken the elevated burden of proof into account when reviewing termination findings. *E.g., Matter of T.C.M.,* 651 S.W.2d 525 (Mo.Ct.App.1983). Analogously, the United States Supreme Court has held that the standard for reviewing criminal convictions, where guilt must be proven beyond a reasonable doubt, is not merely one of substantial evidence but whether "*any* rational trier of fact could have found the essential elements of the crime ·beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99

S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis original).

However, it can be argued with equal or greater force that appellate review should disregard the burden of proof below. Appellate courts do not weigh evidence. That is a function reserved to the triers of fact. *E.g., Cougar Bay Co., Inc. v. Bristol,* 100 Idaho 380, 597 P.2d 1070 (1979). A determination as to whether a disputed fact has been established by a preponderance of evidence, by clear and convincing evidence, or by evidence leaving no reasonable doubt, turns largely upon the weight ascribed to the evidence that supports the finding. If appellate courts are to avoid usurping the function of weighing evidence, then they should limit the scope of review to determining that the burden of proof below was properly understood by the trier of fact and that the ·findings are supported by substantial evidence.

█ In short, there are cogent arguments for and against conducting more rigorous appellate review when the burden of proof at trial is elevated. *See generally* Burnett, *Standards of Appellate Review,* IDAHO APPELLATE HANDBOOK § 3.3.-4.3 (Idaho Law Foundation 1985). Consequently, we are not persuaded to overturn prior Idaho decisions where the substantial evidence standard has been applied to termination cases. We continue to hold that where, as here, the burden of proving neglect by clear and convincing evidence has been noted explicitly and applied by the trial judge, we will not disturb his findings unless they are unsupported by substantial evidence.

### III

█ We now turn to the evidence in this case. The facts may be grouped under two headings—those tending to show unfitness of the mother because she neglected the needs of her children, and those tending to show that the children's needs would be better satisfied if the parental relationship were severed.[2]

2. This classification of facts necessarily is imprecise. Some facts may relate both to the

mother's unfitness and to the children's best interests. However, such a classification is use-

## A. Parental Unfitness

Neglect is statutorily defined as a "situation in which the child lacks parental care necessary for his health, morals and well-being." I.C. § 16–2005(b). In this case it is undisputed that in 1977 the Fremont County office of the Idaho Department of Health and Welfare began receiving complaints that the children were not receiving proper supervision. Periodic contacts revealed that the mother had a drinking problem, was boarding male friends, and was not attending to the children's physical needs. In 1980 the Department filed a petition under the Child Protective Act (CPA). The Department obtained custody of the children pursuant to a stipulation in which the mother admitted neglecting the children. While in the Department's custody, the children were placed with Lydia and Frederick Hofmeister at Pocatello. During 1981 the mother made no apparent progress in resolving her problems. The Department filed a petition for termination and, when the mother moved to Idaho Falls, her file was transferred to Bonneville County. There, for reasons not fully disclosed by the record, the Department's local caseworker moved to dismiss the termination petition and allowed the CPA custody decree to lapse. In May, 1982, the children were returned to the mother.

From this point in time forward, the facts become controverted. Upon substantial evidence the magistrate found that in November, 1982, the mother asked the children's father to care for the children, claiming that they were too great a burden for her. The father turned the children over to the Hofmeisters. About one week later the mother reclaimed the children. However, in May, 1983, she returned the oldest girl to the Hofmeisters and she placed the twins with another married couple, Paul and Ramona Bosworth. In August, 1983, the mother moved the twins again, this time asking her former husband's brother to care for them. He accepted the children but soon placed them with the Hofmeisters, reuniting them with their older sister. The Hofmeisters then petitioned for termination and adoption.

At trial the Bosworths testified that while the twins stayed with them, the mother visited infrequently. When she did visit, she nearly always was intoxicated. They further testified that the mother failed to return affection the children displayed toward her. During a taped interview with the magistrate, the children reported that their mother was still drinking; that she occasionally left them without supervision at night; and that the mother's male visitors had become involved in fights at the home.

Although the Department of Health and Welfare was not a party to this litigation, its caseworkers were called to testify. The Bonneville County caseworker stated that the mother had made progress in her personal life—holding a job and maintaining a clean apartment. She opined that the mother was a "minimal" parent whose rights "should probably not be terminated at this time." Her testimony was contradicted by a caseworker from Pocatello who stated that all social workers concerned with this case had attended a meeting and had reached a consensus that termination should be recommended. The Fremont County caseworker explained that although the mother had made some personal progress, she remained unable to care adequately for three children in addition to the boy from her later marriage.

Upon this record the magistrate found that the mother had neglected the

---

ful in determining whether the parent has been accorded due process. Absent a showing of unfitness, the parent's fundamental liberty interest in raising a child may not be extinguished.

[A finding of unfitness] does not purport—and is not intended—to balance the child's interest in a normal family home against the parents' interest in raising the child. Nor does it purport to determine whether the nat-

ural parents or the foster parents would provide the better home.

*Santosky v. Kramer,* 455 U.S. at 759, 102 S.Ct. at 1398. Rather, it is only when a parent is found to be unfit—i.e., when a statutory ground for termination has been established—that the court should consider whether the child would be comparatively better off if the parental relationship were terminated.

three girls. She had failed to provide parental care necessary for the children's health, morals and well-being. This finding is supported by substantial evidence and will not be disturbed.

B. Best Interests of the Children

█ The judge further found that termination would serve the children's best interests. He noted testimony to the effect that the girls' behavior and school work generally improved while they were living away from the mother. The girls themselves, while expressing affection for their mother, told the judge unequivocally that they felt insecure at her home and did not want to live there. The Fremont County caseworker, who had been involved with the family for many years, stated that the girls needed a permanent, stable living arrangement that the mother had been unable to provide. We conclude that the magistrate's finding as to the children's best interests is likewise supported by substantial evidence and must be sustained on appeal.

Accordingly, the district court's decision, upholding the magistrate's decree of termination, is affirmed. Costs to respondents Hofmeister. No attorney fees on appeal.

WALTERS, C.J., and SMITH, J. Pro Tem., concur.