749 P.2d 492

In the Interest of Melissa Carrie Ann
BUSH DOB: 9/6/83 A Child Under
Eighteen Years of Age.

Vernon "Bud" BUSH, and Cherise
Bush, Respondents/Appellants,

v.

Miriam PHILLIPS and Bill Phillips,
her husband,
Petitioners/Respondents,

and

Robert L. Crowley, Jr., Guardian ad li-
tem for Melissa Carrie Ann
Bush, Respondent.

No. 16645.

Supreme Court of Idaho.

Jan. 28, 1988.

Randall K. Smith, Rexburg, for respondents/appellants.

Grover and Walker, Rigby, for petitioners/respondents. Keith M. Walker argued.

Robert L. Crowley, Rigby, guardian ad litem for Melissa Carrie Ann Bush, respondent.

BISTLINE, Justice.

The district court affirmed a magistrate's decision terminating the parent-child relationship of Bud and Cherise Bush, parents, and their three year old daughter. The petition was filed by the paternal grandparents. The parents argue (1) the termination violated their due process rights; (2) the evidence is insufficient to sustain the magistrate's finding of neglect of the minor child; and (3) the magistrate erred in refusing to determine if rehabilitation of the parents was possible prior to the termination of their parental rights.

Initially, Miriam Phillips, the minor child's paternal grandmother, filed a Petition for Termination of Parental Rights and Award of Permanent Custody.

## PART I. THE FIRST EVIDENTIARY HEARING

The evidence adduced at the first hearing showed that the parents abused drugs and alcohol, encountered employment instability and were lacking in financial responsibility. For example, they were evicted from their apartment, Cherise Bush wrote bad checks, and according to the grandmother and her minor son, both Bud and Cherise abused alcohol and used drugs, including the injection of "crank," a form of amphetamine. They also used cocaine and marijuana. On a grandmother's visit to the marital home, the parents admitted they were using drugs. At that time the child was in her bedroom crying; she had hives and white blisters on her buttocks. The grandmother took her to a local doctor, who reported that her throat was stressed from prolonged screaming. Two weeks later Bud Bush brought the child to the grandmother and relinquished possession to her. He stated: "Mama, take custody. We will destroy her." The grandmother further testified that she told Bud Bush that the court would not award custody merely because the house was dirty and the child's diapers were not changed. He replied: "My God, Mama, are you blind? Look at my arms. I have needle tracks up and down my arms. Look at Cherise. She has them too." Other testimony was that Bud Bush, while driving threw the child against the dashboard, bruising her.

A social worker from the Department of Health & Welfare (DHW) submitted a report which concluded, based on interviews with the parents, grandparents, and collateral contacts, that Bud and Cherise Bush failed to afford their daughter a stable home environment and that the circumstances offered no promise of change. The worker further stated that due to the parents' financial instability, adequate food or needed medical care was not available.

In February 1985, the magistrate filed his decision, concluding that the parents had neglected their daughter within the meaning of the Idaho Termination of Parental Rights Act. The magistrate found that termination was *not* in the best interest of the child *only if:* a) the parents submit to urinalysis, breath or blood tests on a spot check basis; b) the parents abstain completely from alcohol consumption and use of illegal drugs; c) the parents submit to reasonable supervision, direction, and training from DHW to improve their parenting skills. The parents signed an

acceptance of the court order, agreeing to abide by the conditions.[1]

## PART II. THE SECOND EVIDENTIARY HEARING

About three months later, on May 16, 1985, the grandmother moved again for termination of parental rights, incorporating the original petition. Another hearing was held. Cherise Bush admitted to using amphetamines. She had been arrested and subsequently pled guilty to the felony offense of delivery of a controlled substance. Bud Bush conceded that he had consumed alcohol and that he had been arrested for the misdemeanor offense of frequenting a place where controlled substances are known to be located. Neither parent followed through with parenting classes which were available and offered by DHW. The second hearing was continued for one month in order to give the parents a further opportunity to prepare rebuttal. The parents did not appear in court at the appointed time and their attorney proceeded as best he could without them.

On September 20, 1985, the magistrate entered an order terminating appellant's parental rights. The magistrate concluded that by a showing of clear and convincing evidence the parents had neglected their minor child. On appeal to the district court the decision was affirmed. This appeal followed.

The district court reviewed the magistrate's decision as an appellate court, rather than allowing a trial *de novo*. Consequently, "[o]n appeal to this Court we therefore review the record before the magistrate independently of the decision of the district court." *Allen v. Shea*, 105 Idaho 31, 32, 665 P.2d 1041, 1042 (1983); *Nicholls v. Blaser*, 102 Idaho 559, 562, 633 P.2d 1137, 1140 (1981).

The parents contend that the procedures followed in conducting the second hearing in this case violated due process in not complying with the Idaho Termination of Parental Rights Act, I.C., Title 16, Ch. 20, and the Child Protective Act, I.C., Title 16, Ch. 16. Specifically, the parents argue that the second hearing was brought about by motion, rather than a petition; that they were not personally served with notice of the second hearing; and finally, there was no court-ordered investigation by DHW in accordance with I.C. § 16–2008 (1979).[2]

■ A parent's right to custody, care and control of his or her child is a fundamental liberty right protected by the Fourteenth Amendment. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed. 599, 606 (1982); *Matter of GP*, 679 P.2d 976, 991 (Wyo.1984) (due process considerations paramount in termination of parental rights proceeding); *Matter of Baby Boy Myers*, 58 Or.App. 622, 650 P.2d 113, 116 (1982) (termination of parental rights one of the state's most drastic actions, sustained only where due process requirements met); *Matter of Adoption of Darren Todd H.*, 615 P.2d 287, 290 (Okla.1980) (before parental right terminated, full panoply of procedural safeguards must be applied).

A review of the record in this case persuades us that due process has not been violated. The magistrate's first order of February 28, 1985, vesting legal custody with DHW, clearly contemplated further action by the magistrate. The parents signed an agreement acknowledging and accepting the conditions imposed by the court. Thus, the parents were unequivocally on notice that violation of conditions would jeopardize their parental rights.

■ The motion for termination of parental rights, filed by the grandparents just

---

1. The grandparents have had possession of the child since June 25, 1985.

2. Prior to amendment in 1987, I.C. § 16–2008 read in pertinent part:

    **Investigation prior to disposition.**—Upon the filing of a petition, the court shall direct, in all cases where written consent to termination has not been given as provided in this

act, that an investigation be made by an authorized agency and that a report in writing of such study be submitted to the court prior to the hearing, except that where an authorized agency is a petitioner, either in its own right or on behalf of a parent, a report in writing of the investigation made by such agency shall accompany the petition.

three months after the magistrate's order, by its own terms was a continuation of the original action and specifically incorporated the initial petition. The motion only alleged that the parents had violated the conditions imposed by the court. Where, as here, the trial court's order contemplated further action, the filing of a second petition was not required. The jurisdiction which had vested remained vested. A second investigation by DHW would have been superfluous. Nor can it be said that the notice by mail, rather than personal service, violated due process where the parents were made fully aware of the second hearing and attended with counsel who presented evidence and cross-examined witnesses.

The basic issue presented is whether the evidence sufficiently supports the termination decree. In *Santosky, supra,* the Supreme Court, recognizing the liberty interests at stake in a parent-child termination proceeding, held that a decision terminating must be supported by clear and convincing evidence. 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed. 599 (1982). The Idaho legislature, in apparent response to *Santosky,* amended I.C. § 16–2009 in 1983 to require clear and convincing evidence to support the termination of parental rights.[3] Prior to amendment the standard had simply been a preponderance of the evidence. *See* I.C. § 16–2009 (1979).

■ Where the trial court has granted a petition terminating parental rights, that conclusion will not be disturbed on appeal so long as the findings support it, and there is substantial competent evidence in the record to support the findings. *Rhodes v. State of Idaho,* 107 Idaho 1120, 695 P.2d 1259 (1985); *Thompson v. Thompson,* 110 Idaho 93, 96, 714 P.2d 62, 65 (Ct.App.1986). Appellants ask us to abandon the substantial competent evidence test for a more stringent standard of appellate review. This very argument was rejected by the

Court of Appeals in *Thompson, supra. See* 110 Idaho at 95–96, 714 P.2d at 64–65, and the comprehensive list of case cited therein. We agree with the Court of Appeals and "adhere to the 'clearly erroneous' standard of review in child termination cases." *Id.* at 96, 714 P.2d at 65.

■ The substantial evidence or clearly erroneous standard of appellate review, however, is not applied identically in all instances: the appellate standard of review parallels the trial court burden of proof. Obviously, the substantial evidence test requires a greater quantum of evidence in cases where the trial court finding must be supported by clear and convincing evidence, than in cases where a mere preponderance is required. Thus, in termination proceedings, if there is evidence in the record from which the trial court may properly conclude that the issue has been resolved by *clear and convincing* evidence, the appellate court will not set that resolution aside. This standard has been applied in similar situations where the trial court burden of proof is clear and convincing evidence, for example, in determining whether a decedent intended to vest the respondent with survivor rights in a joint account. *See Matter of Estate of Courtright v. Robertson,* 99 Idaho 575, 578, 586 P.2d 265, 268 (1978). *See also Blackburn v. Blackburn,* 249 Ga. 689, 292 S.E.2d 821 (1982) (appropriate standard of appellate review is whether, after reviewing evidence most favorable to appellee, a rational trier of fact could have found by clear and convincing evidence that the parent was unfit).

■ In the case at bar, substantial and competent evidence supports the magistrate's finding that clear and convincing proof warranted the termination decree. The record is replete with instances of poor financial habits, poor hygiene, illicit drug usage and alcohol abuse, and associating the minor child with parental friends of improper influence, as the magistrate so found. The record also supports the addi-

---

3. Idaho Code § 16–2009 (Supp.1987) reads in pertinent part:

    The court's finding with respect to grounds for termination shall be based upon *clear and convincing evidence* under rules applicable to the trial of civil causes, provided that relevant

and material information of any nature, including that contained in reports, studies or examinations, may be admitted and relied upon to the extent of its probative value. (emphasis added).

tional finding that neither parent made any reasonable effort to visit Melissa once physical custody was awarded to the grandparents. The magistrate gave the parents a fair opportunity to demonstrate to the court that they would begin taking their parental duties seriously. Instead of working with DHW to improve their parenting skills, as directed by the magistrate, the parents continued using drugs and alcohol. *Cf. Hofmeister v. Bauer*, 110 Idaho 960, 719 P.2d 1220 (Ct.App.1986) (parental rights terminated for neglect where mother abused alcohol and visited minor children infrequently). While it is the declared policy of the Termination of Parental Rights Act to strengthen family life wherever possible, *see* I.C. § 16–2001 (1979), we agree with the magistrate that under the stewardship of the natural parents the "child lacks parental care necessary for [her] health, morals and well-being." I.C. § 16–2005(b) (Supp.1987).

Finally, the parents contend that the magistrate erred in not making a finding as to whether the parents could or could not have been rehabilitated prior to a termination of their parental rights. In support of this proposition the parents cite *State ex rel. Child v. Clouse*, 93 Idaho 893, 895, 477 P.2d 834, 836 (1970), where it was stated that "... the severance of the parent-child relationship should be avoided unless it is the *only* alternative found consistent with the best interests of the children and parents." (emphasis supplied).

However, *Clouse* was explained in *Hofmeister v. Bauer, supra,* 110 Idaho 960, 719 P.2d 1220 (Ct.App.1986):

In *Clouse* termination was sought and granted under I.C. § 16–2005(e)—the residual category. Although mental impairment under category (d) initially had been alleged in the termination petition, that allegation eventually was withdrawn. The Supreme Court noted:

[The mother's rights] may be forfeited and lost, and her relationship with her children as a parent terminated[,] where the children are abandoned, neglected, abused, *or* the court finds that the best interest of the parent and child requires the termination of the relationship. I.C. § 16–2005. *In the*

*case at bar the court terminated the parent-child relationship on the latter grounds.* 93 Idaho at 896, 477 P.2d at 837 (emphasis added).

We think the *Clouse* opinion, taken as a whole, correctly reflects the structure of I.C. § 16–2005. The Supreme Court's references to the best interests of parents are appropriate to a case governed by category (e). They do not impose a restrictive judicial gloss upon all other categories in I.C. § 16–2005. This interpretation is consistent with the Supreme Court's recent observation, in *Rhodes v. State, Department of Health and Welfare,* 107 Idaho 1120, 695 P.2d 1259 (1985), that a parent-child relationship may be terminated upon a finding 'that the parent has neglected or abused the child *or* that termination is found to be in the best interest of the parent and child.' *Id.* at 1120, 695 P.2d at 1259 (emphasis added). 110 Idaho 960, 962–63, 719 P.2d 1222–23.

Furthermore, we conclude that a requirement mandating a finding as to rehabilitation is a prerogative of the legislative branch, not the judicial. *See e.g.,* O.R.S. 419.523(2) (1987) (Oregon statute requiring finding whether integration into parent's home is improbable in the foreseeable future due to conduct or conditions not likely to change.); A.S. 47.17.030(d) (1984) (Alaska statute providing that before government may seek termination of parental rights, it shall offer protective social services and pursue all other reasonable means of protecting the child.)

On the record before us we find no error in the proceedings below, and the final judgments entered by the magistrate and the district court are affirmed.

No costs or attorney fees awarded.

SHEPARD, C.J., and BAKES and HUNTLEY, JJ., concur.

DONALDSON, J., sat, but did not participate due to his untimely death.