# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 35790

| | | |
|---|---|---|
| DEPARTMENT OF HEALTH & WELFARE, | ) ) ) | Boise, May 2009 |
| Plaintiff/Respondent, | ) ) | 2009 Opinion No. 77 |
| v. | ) ) | Filed: May 29, 2009 |
| JANE DOE III, | ) ) | |
| Defendant/Appellant. | ) ) | Stephen W. Kenyon, Clerk |

Appeal from the Magistrate Court of the Sixth Judicial District of the State of Idaho, Bannock County. Hon. Bryan K. Murray, Magistrate Judge.

This appeal is <u>dismissed</u> for lack of jurisdiction.

Keith Barton & Associates, Blackfoot, for appellant. Randy Smith argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. James Price argued.

_____

W. JONES, Justice

## I. NATURE OF CASE

Magistrate Judge Murray of the Third Judicial District terminated Jane Doe III's (Appellant) parental rights to her children based on neglect, abandonment and the best interest of the children. Because we do not have jurisdiction to hear this case, we dismiss the appeal.

## II. FACTUAL AND PROCEDURAL BACKGROUND

After conducting a hearing on the matter, the magistrate court terminated Appellant's parental rights on October 3, 2008. Appellant filed a motion for permissive appeal to this Court on October 17, 2008. On the same day, Appellant filed with the magistrate court a notice of appeal to this Court. On October 27, 2008, the magistrate court entered an order recommending a direct permissive appeal to this Court pursuant to I.A.R. 12.1. This Court granted leave to Appellant to file a notice of appeal on November 10, 2008. No new notice of appeal was filed.

1

**III. ISSUE ON APPEAL**

Whether Appellant's premature filing of the notice of appeal precludes this Court from having jurisdiction to hear this case?

**IV. STANDARD OF REVIEW**

"[T]he question of subject matter jurisdiction may be raised by the Court at any time *sua sponte.*" *Erickson v. Idaho Bd. of Registration of Professional Engineers and Professional Land Surveyors*, 146 Idaho 852, __, 203 P.3d 1251, 1253 (2009) (quoting *In re Quesnell Dairy*, 143 Idaho 691, 693, 152 P.3d 562, 564 (2007)).

**V. ANALYSIS**

Appellant failed to comply with the procedural rules in I.A.R. 12.1(d), thus preventing this Court from having jurisdiction to consider the merits of this case. After this Court enters an order permitting a party in a case regarding termination of parental rights to appeal directly to the Supreme Court, the party requesting permission to appeal is required to file a notice of appeal with the lower court. See *In re Doe*, __ Idaho __, __, __ P.3d __, __ 2009 WL 1234528 (2009). I.A.R. 12.1(d) states in relevant part:

> Any appeal by permission of a judgment or order of a magistrate under this rule shall not be valid and effective unless and until the Supreme Court shall enter an order accepting such judgment or order of a magistrate, as appealable and granting leave to a party to file a notice of appeal within a time certain.

I.A.R. 12.1(d) clearly contemplates that the party requesting permission to appeal must file a notice of appeal with the lower court *after* this Court accepts review of a motion for a direct permissive appeal. Numerous civil cases in Idaho hold that a premature notice of appeal is ineffective to vest jurisdiction on appeal.[1] *State v. Gissel*, 105 Idaho 287, 290, 668 P.2d 1018, 1021 (Ct. App. 1983); see also *Kraft v. State*, 99 Idaho 214, 579 P.2d 1197 (1978) (notice of appeal filed before written findings of fact, conclusions of law or judgment was entered; appeal dismissed as premature); *Hamblen v. Goff*, 90 Idaho 180, 409 P.2d 429 (1965) (written judgment filed subsequent to notice of appeal; appeal dismissed for lack of appellate jurisdiction); *Martin v. Soden*, 80 Idaho 416, 419, 332 P.2d 482, 483 (1958) ("The filing of the notice of appeal . . . [is] jurisdictional. In the absence of compliance with the provisions of the code, this Court has

---

[1]    I.A.R. 17(e)(2) provides an exception to the rule that renders a prematurely filed notice of appeal invalid, but the exception only applies if the notice of appeal is "filed from an appealable judgment, order or decree." Permissive appeals brought under I.A.R. 12.1 do not fit within the limited circumstances provided for in I.A.R. 17(e)(2). Thus, the exception is inapplicable in this case.

no jurisdiction to entertain the appeal."); *Goade v. Gossett*, 35 Idaho 84, 204 P. 670 (1922) (appeal from order denying new trial dismissed where notice of appeal was filed prior to entry of the written order denying motion for new trial). In this case, on October 17, 2008, Appellant filed a notice of appeal with the district court that she was appealing to this Court, which was nearly a month before this Court granted leave to Appellant to file such notice of appeal. Appellant's notice of appeal is invalid because it was filed prematurely. Because a notice of appeal was not timely filed in this case, we do not have jurisdiction to consider Appellant's arguments on the merits.

## VI. CONCLUSION

Appellant's failure to timely file a notice of appeal to this Court precludes us from having jurisdiction to review this case on the merits. The appeal is dismissed.

HORTON, J., specially concurring,

I join in the majority's conclusion that Appellant's premature filing of the notice of appeal to this Court deprives us of jurisdiction to entertain the instant appeal. However, given the fundamental liberty interest associated with the parent-child relationship, I believe that a discussion of this Court's shared responsibility for Appellant's failure to file a timely notice of appeal and discussion of the merits of this appeal is warranted. Appellant claims that there is insufficient evidence supporting the magistrate court's order terminating her parental rights. I disagree.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant has had a long and tragic history as a parent and has repeatedly been a victim of violent acts by men. She was approximately 15 years old when a man raped her and, as a result, she gave birth to her first child in 1996. In 2005, Appellant consented to the termination of her parental rights to the child.

Appellant gave birth to her second child in 1998; the child died approximately one month later. Appellant's third child was born in 2001. Three months later, Appellant was cited for injury to a child, and her parental rights were eventually terminated. Appellant gave birth to a fourth child in 2002 and the State immediately placed the child in foster care. Appellant consented to termination of her parental rights as to this child in 2003.

3

Appellant's parental rights to her fifth and sixth children are at issue in this case. Her fifth child was born in January 2005. The biological father is unknown, but John Doe (Doe) is the legal father of the child. Appellant's sixth child was born in February 2006, and Doe is the biological and legal father of the child.

The State filed a child protection case on behalf of the children on February 1, 2006. Appellant and Doe stipulated to the court's jurisdiction and a case plan of protective supervision on March 1, 2006. The children remained in the care of Appellant and Doe.

In late July 2006, Doe was arrested for domestic battery and resisting and obstructing officers. Appellant was too intoxicated to care for the children. Accordingly, the court entered an *ex parte* order removing the children from the custody of the parents and placing them in shelter care. The court amended the case plan after it found that it was in the best interest of the children not to be in the custody of their parents, and the Department of Health and Welfare (the Department) took custody of the children.

In August 2006, two review hearings were conducted. The children were placed in the custody of the Department. The case plan was amended, requiring Appellant to obtain a drug and alcohol evaluation and complete anger management and domestic violence programs. The court also ordered Doe to complete similar programs, which he did while he was in jail. The plan required Appellant and Doe to keep illegal drugs and alcohol out of the home.

At another review hearing in January 2007, the court indicated it was still concerned about Appellant's care of the children and her parenting skills during their visits with her. During the hearing the court noted that Appellant and Doe had tested positive for alcohol and had not yet started their substance abuse treatment. The court acknowledged Appellant's progress in obtaining mental health and anger management treatment; however, it also noted that neither Appellant nor Doe had completed their non-violence programs.

During the July 2007 hearing the court received a mixed report regarding Appellant and Doe's progress. Although visitation was improving and the two were completing treatment, they had not accomplished reunification with the children. The court warned Appellant and Doe that the case had been in progress for twelve months and if reunification did not occur by fifteen months, then the Department would be required to seek termination of their parental rights.

The court approved expanded visitation and an extended home visit during a hearing in late September 2007. The visit only lasted eight days. Appellant and Doe admitted that they

4

drank alcohol at least twice during the visit. Appellant and Doe expressed their desire to have the children home by Christmas, but the court denied their request. On December 21, 2007, Doe, inebriated, moved out of the family's home.

Appellant then asked the court to find compelling reasons not to require the Department to pursue termination of her parental rights. The court denied her request. The Department agreed to continue working on reunification with Appellant on the condition that Doe would not be in the home or around the children without approval by the Department, and that Appellant obtain a custody order giving her sole physical custody. Appellant never filed a custody action. Although she and Doe were separated, they continued to have regular contact with each other. Doe has since admitted that the children should not be placed with him due to his alcoholism and regular drug use, among other poor choices he continues to make.

Before an extended home visit beginning on April 21, 2008, the Department specifically told Appellant that she was not to allow the children to have contact with Doe, except as approved by the Department. Appellant repeatedly violated the condition, allowing the children to have lunch at a park with Doe, help Doe move over a period of three days, and attend church and shop with him. Appellant knew that Doe was drinking and possibly using marijuana during that time. She also knew that Doe had not completed his domestic violence course. Appellant's domestic violence class coordinator dropped her in June 2008 for the second time due to absences.

At trial, the court received testimony that Appellant had used alcohol during the extended home visit in April 2008. Further, Jeff Junod (Junod) testified that on June 28, 2008, Appellant had been drinking and asked that Junod's son, who Appellant knew had also been drinking, ride with her in order to watch the children while she went into a store to allegedly purchase a product used to mask evidence of drug use. She came out of the store with a brown paper bag, returned home and, assisted by Junod's son, proceeded to finish a bottle of tequila while the children were in the other room. Appellant next drove with Junod's son and the children to the liquor store to purchase another bottle of tequila and then stopped by Junod's home to have more drinks. She was visibly intoxicated and almost hit another car when she left, with the children, to return home.

Due to concerns about Appellant's continued alcohol use, the Department terminated the extended home visit on July 3, 2008. Upon returning to foster care, one of the children had the

problem of wanting to go to the bathroom in the yard. With prompting from the foster mother, the child quickly overcame that problem. The other child was noticeably clingy to the foster mother after the extended home visit was terminated.

Appellant terminated her relationship with her Psycho-Social Rehabilitation (PSR) worker on July 25, 2008. Appellant testified at trial that the PSR worker was billing Medicaid for time spent with her. However, this was in direct contradiction to Appellant's earlier testimony that the PSR worker had spent more time with her than was approved for payment. Appellant also testified that she stopped going to counseling because she did not have a ride, yet she had her own transportation and had been giving Doe rides to work, church, and shopping. Testimony also indicated that Appellant had not been following through with substance abuse treatment.

Appellant has Bipolar Disorder, Post Traumatic Stress Disorder, and Borderline Personality Disorder. She has participated in PSR services for years, including obtaining help in psychological, legal, family, social, basic living skills, and financial areas. The court noted that Appellant has made progress in the management of her anger and that medication has stabilized her moods. Appellant's PSR worker reported that Appellant's symptoms from her mental illnesses no longer affect her ability to parent. Her counselor believes Appellant is no more limited by her psychological condition than any other parent, that Bipolar Disorder is her primary problem, and that it is adequately controlled with medication.

The trial court found that Appellant was able to control her behavior for only short periods of time; she was compliant long enough to earn home visits with the children but as soon as she had control of the children she returned to the behavior that originally brought the children into the Department's custody. The court also found that Appellant is not capable of caring for her own well-being and safety, let alone that of her children.

The court further found that the children have done well and advanced while in the care of the foster parent. The court determined that it is in the children's best interest to remain in the care of the foster parent. The parents have agreed that the foster parent is the right person to adopt the children.

On October 3, 2008, the court found that termination of Appellant's parental rights was in the best interest of the children and based its decision on the grounds of neglect and abandonment. At the same time, the court terminated the parental rights of the unknown

biological father of Appellant's fifth child, as well as Doe's parental rights to Appellant's fifth and sixth children. Doe has not appealed that decision. Appellant filed a motion for permissive appeal to this Court as well as a notice of appeal on October 17, 2008. On October 27, 2008, the magistrate court entered an order recommending a direct permissive appeal to this Court pursuant to I.A.R. 12.1. This Court granted Appellant's motion for direct permissive appeal. On appeal, Appellant asserts that there is insufficient evidence to support the trial court's findings of neglect and that termination would be in the best interest of the children.

## II. STANDARD OF REVIEW

The State must prove the grounds for terminating a parent-child relationship by clear and convincing evidence. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006); I.C. § 16-2009. In an action to terminate parental rights, where a trial court has applied a clear and convincing evidentiary standard, this Court must determine if the magistrate court's decision was supported by substantial and competent evidence. *State v. Doe*, 144 Idaho 534, 535, 164 P.3d 814, 815 (2007) (citing *CASI Found., Inc. v. Doe*, 142 Idaho 397, 399, 128 P.3d 934, 936 (2006)). "Substantial, competent evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *State v. Doe*, 143 Idaho 343, 345-46, 144 P.3d 597, 599-600 (2006) (quoting *Folks v. Moscow Sch. Dist. No. 281*, 129 Idaho 833, 836, 933 P.2d 642, 645 (1997)). This Court will indulge all reasonable inferences in support of the magistrate court's judgment when reviewing an order terminating parental rights. *CASI Found.*, 142 Idaho at 399, 128 P.3d at 936 (citing *Doe I v. Doe*, 138 Idaho 893, 900, 71 P.3d 1040, 1047 (2003)).

## III. ANALYSIS

A parent has a fundamental liberty interest in maintaining a parent-child relationship. *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002) (citing *Quilloin v. Walcott*, 434 U.S. 246 (1978)). "'A parent's right to custody, care and control of his or her child is a fundamental liberty right protected by the Fourteenth Amendment.'" *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007) (quoting *In re Bush*, 113 Idaho 873, 875, 749 P.2d 492, 494 (1988)). Our legislature also recognizes the importance of maintaining the parent-child relationship: "Implicit in [the Termination of Parent and Child Relationship Act] is the philosophy that wherever possible family life should be strengthened and preserved . . . ." I.C. § 16-2001. Therefore, the requisites of due process must be met when the Department intervenes to

terminate the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006) (citation omitted).

Idaho Appellate Rule 12.1(d) provides: "Any appeal by permission of a judgment or order of a magistrate under this rule shall not be valid and effective unless and until the Supreme Court shall enter an order accepting such judgment or order of a magistrate, as appealable and *granting leave to a party to file a notice of appeal within a time certain*." (Emphasis added.) Unfortunately, in this case our order granting permissive appeal did not conform to the rule's requirement as it contained no grant of leave to "file a notice of appeal within a time certain." As a result, Appellant understandably relied on her prior notice of appeal and did not file a new one. Unfortunately, the absence of a notice of appeal filed *after* our order deprives this Court of jurisdiction to entertain this appeal for the reasons stated in the majority opinion. *In re Doe,* ___ Idaho ___, ___, ___ P.3d ___, ___, 2009 WL 1234528 (2009). However, because it appears that this Court's order contributed to Appellant's failure to file a new, timely notice of appeal, I believe that discussion of the merits of the appeal is warranted.

The Department filed a petition for the termination of the parent-child relationship pursuant to I.C. § 16-2005. Idaho Code § 16-2005 permits the Department to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the child; or (e) the parent has been incarcerated and is likely to remain incarcerated for a substantial period of time during the child's minority. I.C. § 16-2005(1). Each statutory ground is an independent basis for termination. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007) (citing *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991)). In this case, while the magistrate court found that termination was in the best interest of the children and terminated Appellant's rights on the grounds of abandonment and neglect, Appellant only challenges the trial court's findings of neglect and that termination was in the children's best interest.[2]

---

[2]    As noted, I.C. § 16-2005 requires a finding that termination is in the child's best interest and one of five circumstances exist. In view of Appellant's failure to challenge the trial court's finding of abandonment, only the trial court's finding that termination was in the children's best interest is necessary for resolution of this appeal. As this Court has explained: "When a decision is 'based upon alternative grounds, the fact that one of the grounds may

8

A.      Substantial evidence supports the trial court's finding of neglect.

"Neglect," for the purposes of the Child Protective Act, is defined at I.C. § 16-2002(3) as when "[t]he parent(s) has failed to comply with the court's orders in a child protective act case or the case plan, and reunification of the child with his or her parent(s) has not occurred within the time standards set forth . . . ." Idaho Code § 16-1602(25) further defines a neglected child as one "[w]ho is without proper parental care and control, or subsistence, education, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them . . . ," or "[w]hose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being."

In this case the magistrate court noted that the State made reasonable efforts to avoid removing the children from their parents, but "the choices of the parents to pursue a life of crime, substance abuse and violence made the reunification efforts ineffective." The court then concluded that the parents failed to comply with the court and case plan, finding that although the parents made efforts in some areas, there had been no successful mitigation of the safety and well-being issues that brought the children into the Department's care. The court further stated that "the parents have proven through their lack of progress that they are not able or willing to provide a stable secure home for the children and maintain a normal parent-child relationship." Specifically as to Appellant, the court concluded that she failed to comply with court orders and case plans, and that when the children were returned to her to evaluate her progress she failed to parent them and stay sober. Finally the court found Appellant's behavior placed the children's safety at risk and their future in doubt if left to her care.

Appellant did not complete a domestic violence course. She did not abstain from using alcohol. She failed to complete alcohol and substance abuse treatment. She terminated PSR services and failed to complete individual counseling. I would conclude that there is substantial,

be in error is of no consequence and may be disregarded if the judgment can be sustained upon one of the other grounds.'" *Andersen v. Prof'l Escrow Serv.s, Inc.,* 141 Idaho 743, 746, 118 P.3d 75, 78 (2005) (quoting *MacLeod v. Reed,* 126 Idaho 669, 671, 889 P.2d 103, 105 (Ct. App. 1995)).

Although a discussion of the trial court's finding of neglect would not have been necessary for resolution of this appeal if this Court were to have jurisdiction, as virtually the entirety of this concurring opinion is dicta, I will also address this issue.

competent evidence in the record supporting the magistrate court's finding that Appellant failed to follow her case plan, which meets the definition of neglect in I.C. § 16-2002(3).

Further, the record amply demonstrates that Appellant lacks the parenting skills necessary for her children's health, safety, and well-being, as defined by I.C. § 16-1602(25), as evidenced by: (1) her continued abuse of alcohol without adequately seeking treatment; (2) her failure to remove the children from Doe's presence despite the history of domestic violence and his admitted continued abuse of drugs and alcohol; and (3) her conduct in driving with her children while intoxicated.

B.      Substantial evidence supports the trial court's finding that termination is in the children's best interest.

Appellant understandably focuses on the undisputed evidence that the children were bonded to her and that she loved the children. However, as this Court has previously observed, "a child may not live on parental affection alone." *State ex rel. Child v. Clouse,* 93 Idaho 893, 896, 477 P.2d 834, 837 (1970). The trial court found that it was "dangerous to the short term safety and long term development and well-being of the children" to be with Appellant, that Appellant was unable to provide for the children's needs and that the children need a "safe, stable and permanent home." In light of the evidence of neglect and given the children's progress since their removal from Appellant's custody, I believe that there is substantial evidence supporting the trial court's finding that termination was in the children's best interest.

## IV. CONCLUSION

Were this Court to have jurisdiction, I would affirm the magistrate court's decision to terminate Appellant's parental rights; because we do not, I concur in the majority's opinion.

Chief Justice EISMANN, Justices BURDICK and J. JONES, CONCUR.