992 P.2d 1226

**In the Matter of Jane Doe, a minor Child,**

**STATE of Idaho, DEPARTMENT OF HEALTH AND WELFARE, Petitioner–Respondent,**

v.

**Jane DOE I, Respondent–Appellant.**

No. 25523.

Court of Appeals of Idaho.

Dec. 23, 1999.

Review Denied Jan. 20, 2000.

Randall D. Schulthies, Chief Bannock County Public Defender; David R. Martinez, Deputy Public Defender, Pocatello, for appellant.

Hon. Alan G. Lance, Attorney General; Brent A. Asay, Deputy Attorney General, Boise, for respondent.

PERRY, Chief Judge.

Jane Doe I appeals from an order of the district court upholding the magistrate's decision to terminate her parental rights as they pertain to her child, Jane Doe (Baby Doe). For the reasons set forth below, we affirm.

## I.

## BACKGROUND

On May 22, 1995, Baby Doe was born prematurely with methamphetamine in her system.[1] She was immediately taken into the custody of the Department of Health and Welfare (the Department) pursuant to the Child Protection Act. I.C. §§ 16–1601 to –1637. Thereafter, at an adjudicatory hearing to determine continued temporary custody, Jane Doe entered into a stipulation and decree for the Department to maintain legal custody of Baby Doe.

In May 1996, the Department filed a petition for termination of the parent and child relationship between Jane Doe and Baby Doe. After a hearing on the matter, the petition was denied based primarily on the Department's failure to sustain its burden of proving that it exercised all reasonable efforts to reunite Jane Doe and Baby Doe. However, following a separate hearing, the Department's temporary custody of Baby Doe was renewed.

In a separate felony criminal proceeding, Jane Doe was charged with, and pled guilty to, injury to a child, I.C. § 18–1501(1), as a result of the presence of methamphetamine in Baby Doe's system. Jane Doe was sentenced to a unified ten-year term, with two years fixed. The sentencing court retained jurisdiction and, following the retained juris-

diction period, suspended execution of the sentence and placed Jane Doe on ten years' probation. Initially, Jane Doe was placed on intense probation for a period of six months. During that period, she failed to adhere to the terms and conditions of her probation and was required to serve sixty-five days of discretionary jail time.

Although she failed to successfully complete intense probation, Jane Doe was transferred to regular probation status. On November 13, 1997, Jane Doe's probation officer visited her and observed several probation violations. Jane Doe was arrested, and a report of probation violation was filed in Jane Doe's criminal case. Thereafter, she admitted violating the terms and conditions of her probation. Jane Doe's previously suspended unified ten-year sentence, with two years fixed, was ordered into execution.

On March 4, 1998, the Department filed a second petition for termination alleging that Jane Doe had neglected the child and that termination was in the best interest of both Jane Doe and Baby Doe. The second petition was accompanied by a termination report completed by Baby Doe's case manager, Robert Schelske. Jane Doe filed a motion to disqualify the presiding magistrate. The magistrate denied that motion, and an adjudicatory hearing was conducted. At the close of the hearing, the magistrate ordered that the parent and child relationship between Jane Doe and Baby Doe be terminated.

Jane Doe appealed the magistrate's decision to the district court, which affirmed. Jane Doe again appeals.

## II.

## ANALYSIS

■ On review of a decision of the district court, rendered in its appellate capacity, we examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate deci-

---

1. According to a termination report submitted to the magistrate and made part of the record on appeal, Babe Doe was the second child born to Jane Doe with drugs in its system.

sion. *Hentges v. Hentges,* 115 Idaho 192, 194, 765 P.2d 1094, 1096 (Ct.App.1988).

## A. Motion to Disqualify

■ Jane Doe contends that the magistrate erred when it denied her motion to disqualify. She sought disqualification pursuant to I.R.C.P. 40(d)(2)(A)(4). This Court utilizes an abuse of discretion standard to review the denial of such motions. *Bell v. Bell,* 122 Idaho 520, 529, 835 P.2d 1331, 1340 (Ct.App.1992).

■ In her motion, Jane Doe asserted that the magistrate was prejudiced against her because it had presided over the first termination proceeding. However, in order for disqualification to be appropriate under I.R.C.P. 40(d)(2)(A)(4), the alleged prejudice must stem from an extra-judicial source. *Desfosses v. Desfosses,* 120 Idaho 27, 29, 813 P.2d 366, 368 (Ct.App.1991). In this case, any alleged prejudice would not have stemmed from an extra-judicial source. We note that, in the first proceeding, the magistrate declined to terminate the parent and child relationship. We conclude that Jane Doe failed to show that the magistrate was prejudiced against her. Therefore, the magistrate did not abuse its discretion when it denied Jane Doe's motion to disqualify.

## B. Termination of Parent and Child Relationship

■ It is well settled that, in a proceeding to terminate a parent and child relationship, the grounds for termination must be shown by clear and convincing evidence. I.C. § 16–2009; *In re Aragon,* 120 Idaho 606, 608, 818 P.2d 310, 312 (1991); *In re Baby Doe,* 130 Idaho 47, 53, 936 P.2d 690, 696 (Ct.App.1997). Where the trial court has granted a petition terminating parental rights, that conclusion will not be disturbed on appeal so long as the findings support it and there is substantial competent evidence in the record to support the findings. *In re Bush,* 113 Idaho 873, 876, 749 P.2d 492, 495 (1988). In determining whether the parent and child relationship should be terminated, it is for the trial court to determine whether clear and convincing evidence supports such a termination. *In re Crum,* 111 Idaho 407,

409, 725 P.2d 112, 114 (1986). Our task on appeal is to determine whether the trial court's finding is clearly erroneous. *Id.* Furthermore, in reviewing such a finding, this Court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Aragon,* 120 Idaho at 608, 818 P.2d at 312.

The magistrate in this case terminated the parent and child relationship based on its findings that Jane Doe had neglected Baby Doe and that termination was in Baby Doe's best interest. Jane Doe contests both findings.

### 1. Neglect

Jane Doe challenges the magistrate's finding that termination was appropriate due to her neglect of Baby Doe. Idaho Code Section 16–2005 sets forth the conditions under which termination of the parent and child relationship may be granted. Neglect, defined as "a situation in which the child lacks parental care necessary for his [or her] health, morals and well-being," is such a ground. I.C. § 16–2005(b). The question of neglect is one of fact. *Thompson v. Thompson,* 110 Idaho 93, 94, 714 P.2d 62, 63 (Ct. App.1986).

■ Jane Doe contends that a finding of neglect is not warranted because Baby Doe was in the custody of the Department. However, neglect is a permissible ground for termination even where the parent is a noncustodial parent. *See Thompson,* 110 Idaho at 97, 714 P.2d at 66. In *Thompson,* the appellant argued that her conduct should be evaluated solely in terms of a noncustodial parent. The Court, in interpreting I.C. § 16–2005(b), held that a parent is not relieved of his or her responsibility to provide appropriate parental care by informally relinquishing custody of a child to a relative or friend. *Thompson,* 110 Idaho at 97, 714 P.2d at 66. Jane Doe became a noncustodial parent because the Department was awarded custody after Baby Doe was born with methamphetamine in her system. Thus, in this case, as in *Thompson,* the fact that Jane Doe is a noncustodial parent is based on her own

neglectful actions. Therefore, the *Thompson* Court's reasoning is equally applicable in this case.

■■■ At the close of the hearing on the Department's second petition for termination, the magistrate outlined its basis for finding neglect in this matter. The magistrate stated that it was "important to reflect back upon the ruling" issued after the denial of the first petition. However, Jane Doe has failed to make that ruling or a transcript of the hearing that preceded it a part of the record on appeal. The missing portion of the record must be presumed to support the action of the trial court. *Lunn v. Lunn,* 125 Idaho 193, 195, 868 P.2d 521, 523 (Ct.App.1994). Thus, we will presume that the magistrate's findings issued after the first termination hearing support the magistrate's decision to terminate the parent and child relationship.

The termination report submitted to the magistrate indicated that Jane Doe was dismissed from her chemical dependency treatment program because of her failure to follow through with her appointments. She also failed both to follow through with her domestic violence referral and to attend all but one of her required parenting classes. Additionally, Jane Doe attended only approximately half of her scheduled visits with Baby Doe.

According to the magistrate, the reason that it denied the Department's first termination petition was because the Department's "communications to and the possible perception of the mother relative to the reunification plan [were] inconsistent." Thus, a plan for Jane Doe's reunification with Baby Doe was formulated.[2] This reunification plan consisted essentially of two parts—Jane Doe's compliance with the terms and conditions of her criminal probation and her assumption of various parental responsibilities. With regard to the first part of the reunification plan, Jane Doe was aware that, if the terms and conditions of her probation were not complied with, it would be "very difficult"

to say that she had complied with the reunification plan.

Jane Doe violated her intense probation by using methamphetamine, refusing to abide by her curfew, and failing to attend drug treatment sessions so that she was dismissed from the program. Due to these probation violations, Jane Doe was ordered to serve sixty-five days of discretionary jail time by her probation officer. Thus, according to Jane Doe's probation officer, Jane Doe did not successfully complete her intense probation.

At the end of her unsuccessful intense probation period, Jane Doe was transferred to regular probation. Approximately two weeks later, Jane Doe's probation officer visited a location where Jane Doe had purportedly moved to without permission. Jane Doe's stated purpose for changing residences without informing her probation officer was so that she could again associate with an individual involved in the drug culture. During that visit, the probation officer noticed that Jane Doe smelled of alcohol and also observed beer and an empty bottle of liquor in the residence. The probation officer then conducted a search of the residence and discovered a credit card that did not belong to Jane Doe, as well as drug paraphernalia. A "clean" urine sample was also found. Jane Doe later admitted she would have used that sample in the event she was subjected to a urine test following the use of methamphetamine.

■■■ A report of violation was filed alleging that Jane Doe had violated the terms and conditions of her probation by, among other things: (1) consuming alcohol; (2) using methamphetamine; (3) possessing drug paraphernalia; and (4) changing residences without informing her probation officer. Subsequently, Jane Doe admitted using methamphetamine at a time she suspected she might have again been pregnant.[3] Based on Jane Doe's admission to violating the terms and conditions of her probation,

---

2. The plan, which Jane Doe signed, is also not contained in the record on appeal.

3. A subsequent pregnancy test revealed that Jane Doe was, in fact, pregnant at a time she admittedly used methamphetamine and consumed alcohol.

the district court in her criminal case revoked Jane Doe's probation and ordered the previously suspended sentence into execution.

A second part of the reunification plan required Jane Doe to assume various parental responsibilities. Robert Sheckle, Baby Doe's case manager, testified regarding the requirements of that portion of the plan. According to Sheckle, Jane Doe failed to establish a stable home for Baby Doe. Scheckle visited Doe's purported address and based on his observations of the condition of the room in which she was allegedly living, coupled with Jane Doe's arrest at another location, determined that Jane Doe had failed to satisfy this requirement. Additionally, according to Scheckle, Jane Doe's employment was sporadic, and she had failed to participate in necessary communication and skills classes with Baby Doe.

Based on all of the foregoing, we conclude that there is substantial competent evidence to support the magistrate's finding of neglect. Therefore, that finding will not be overturned on appeal.

### 2. Best interest of Baby Doe

 Jane Doe contends that termination is not in Baby Doe's best interest. Once a statutory ground for termination is found, the magistrate must then decide what is in the best interest of the child. *In re Doe*, 123 Idaho 502, 504, 849 P.2d 963, 965 (Ct.App. 1993).

 Jane Doe asserts that because an expert did not testify that termination was in Baby Doe's best interest, the magistrate's finding was erroneous. However, there is no requirement that a party seeking termination present expert testimony to support the assertion that termination would be in the child's best interest. *In re Doe*, 133 Idaho 805, 992 P.2d 1205 (1999). *See also Hofmeister v. Bauer*, 110 Idaho 960, 719 P.2d 1220 (Ct.App.1986) (upholding termination of the parent and child relationship in the absence of expert testimony).

 Schelske testified that, in his opinion, it was in Baby Doe's best interest to have the parent and child relationship termi-

nated because Baby Doe had never lived with Jane Doe, and Jane Doe had failed to follow through on the reunification plan. Schelske also stated that, because Baby Doe was three years old and had been in foster care for more than eighteen months, permanency was a paramount concern. Furthermore, Schelske testified that Baby Doe was developmentally delayed and, thus, was a "special needs" child.

When it found that termination was in Baby Doe's best interest, the magistrate referred to its findings of fact at the close of the first termination hearing in holding that termination was in Baby Doe's best interest. However, as stated above, Jane Doe has failed to make that ruling a part of the record on appeal and, thus, this Court will presume it supports the finding of the magistrate. Additionally, the magistrate determined that, because Jane Doe's probation was revoked, she would not be available as a parent to Baby Doe. Based on all the foregoing, the magistrate found that Baby Doe's best interest would be served by termination of the parent and child relationship.

There is substantial competent evidence to support the magistrate's finding that termination was in Baby Doe's best interest. Therefore, that finding will not be disturbed on appeal.

### 3. Jane Doe's best interest

 Jane Doe also asserts that, because termination was not in her best interest, the magistrate erred. We first note that Jane Doe's best interest is not a factor to consider when termination of the parent and child relationship is granted because of neglect. *See In re Doe*, 133 Idaho 805, 992 P.2d 1205 (1999). Moreover, because this Court has concluded that the magistrate's findings of neglect and that termination was in the best interest of Baby Doe are supported by substantial competent evidence, it is unnecessary to discuss the magistrate's finding that termination was also in Jane Doe's best interest and, thus, proper, under I.C. 16–2005(e). *See In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991) ("statutory grounds for termination under I.C. § 16–2005 are independent

and if any one or more of the grounds for termination are found, termination may be granted").

## III.

## CONCLUSION

We hold that the magistrate did not err when it denied Jane Doe's motion for disqualification. We further hold that neglect is a proper ground for termination of the parent and child relationship where that parent is a noncustodial parent due to his or her own actions and the child is in the custody of the state. Finally, we hold that the magistrate's findings that Jane Doe neglected Baby Doe and that termination was in the best interest of Baby Doe are supported by substantial competent evidence. Therefore, the order of the district court upholding the magistrate's decision terminating the parent and child relationship between Jane Doe and Baby Doe is affirmed.

Judge LANSING, and Judge SCHWARTZMAN, concur.