**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41060**

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL RIGHTS OF JANE (2013-12) DOE. | ) ) ) |
| ------------------------------------------------------- | ) |
| IDAHO DEPARTMENT OF HEALTH & WELFARE, | ) ) |
| | ) |
| Petitioner-Respondent, | ) ) |
| and | ) ) |
| GUARDIAN AD LITEM, | ) ) |
| Respondent, | ) ) |
| v. | ) ) |
| JANE (2013-12) DOE, | ) ) |
| Respondent-Appellant. | ) ) ) |

2013 Unpublished Opinion No. 680

Filed: September 24, 2013

Stephen W. Kenyon, Clerk

**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY**

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County.  Hon. Roger Harris, Magistrate.

Order terminating parental rights, <u>affirmed</u>.

Williams Law Office Chtd.; Timothy J. Williams, Twin Falls, for appellant.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Jane Doe appeals from the magistrate's order terminating her parental rights to her child, B.N.  We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Doe, thirty-two years old, started using drugs when she was eighteen years old.  Since that time, she has had periods of drug use and periods of sobriety.  In March 2009, Doe gave

1

birth to B.N. during a period of sobriety but started using drugs again in December 2010. Additionally, Doe and B.N.'s father (Father) started to have disputes involving domestic violence. At the end of July 2011, Doe and Father engaged in a physical fight in the presence of B.N. Father removed B.N. from the home and took the child to his mother's (Grandmother) place of work and dropped the child off. Grandmother cared for B.N. for a few days before determining that she could not handle the child's behavior and contacted Child Protection Services (CPS). On August 3, 2011, B.N. was placed in the custody of the Idaho Department of Health & Welfare (Department) and has been in State custody since that time. Subsequently, a case plan was agreed upon by Doe and the Department and ordered by the magistrate. The case plan focused on several key areas, including substance abuse, domestic violence, parenting skills, stable employment, and safe housing.

Since the initiation of the case plan, Doe has failed to submit to a majority of her drug tests and admitted to continual use of methamphetamine from the start of the case plan until July 2012. Additionally, Doe admitted to instances of domestic violence until March 2012. During this time, Doe was on probation for driving without privileges. She violated her probation twice, once for failing to pay court fees and continuing to use drugs and alcohol, and once for failing to complete a treatment program at the Walker Center. On May 19, 2012, Doe was sentenced to a term of incarceration for violating her probation. On June 29, 2012, while Doe was incarcerated, the Department filed a petition to terminate Doe's parental rights to B.N. B.N. had been in the custody of the Department for eleven months at the time the petition was filed. The Department sought termination on the grounds of neglect. Doe was released from incarceration on July 5, 2012, and immediately entered treatment at the Walker Center. She completed her treatment on August 2, 2012, and subsequently moved in with some friends. She began an intensive outpatient treatment program that concluded on November 8, 2012. Thereafter, Doe began attending drug counseling, domestic violence classes, parenting classes, and aftercare classes.

The trial for termination occurred on February 25 and 26, 2013, nearly nineteen months after B.N. entered foster care. Following the trial, the magistrate ordered Doe's parental rights

2

terminated on the grounds of neglect.[1]  The magistrate also determined that termination was in the best interest of the child.  Doe timely appeals.

## II.

## ANALYSIS

Doe claims that the magistrate erred by granting the petition to terminate her parental rights to B.N.  The magistrate found that Doe neglected her child and that termination was in the child's best interest.  A parent has a fundamental liberty interest in maintaining a relationship with his or her child.  *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002).  *See also Quilloin v. Walcott*, 434 U.S. 246, 255 (1978).  This interest is protected by the Fourteenth Amendment to the United States Constitution.  *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007).  "Implicit in [the Termination of Parent and Child Relationship Act] is the philosophy that wherever possible family life should be strengthened and preserved . . . ."  I.C. § 16-2001(2).  Therefore, the requisites of due process must be met when the Department intervenes to terminate the parent-child relationship.  *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006).  Due process requires that the Department prove grounds for terminating a parent-child relationship by clear and convincing evidence.  *Id.*

Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by "clear and convincing evidence."  *Santosky v. Kramer*, 455 U.S. 745, 746 (1982).  *See also* I.C. § 16-2009; *Doe*, 146 Idaho at 761-62, 203 P.3d at 691-92; *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion.  *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009).  The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated.  *Id.*  The Idaho Supreme Court has also said, however, that the substantial evidence test requires a greater quantum of evidence in cases where the trial court finding must be supported by clear and convincing evidence than in cases where a mere preponderance is

---

[1]     The magistrate also terminated the parental rights of Father.  Father does not appeal the magistrate's decision to terminate his parental rights.

3

required.  *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006).  Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain.  *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006).  Further, the magistrate's decision must be supported by objectively supportable grounds.  *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code § 16-2005 permits the Department to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist:  (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period which will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time.  Each statutory ground is an independent basis for termination.  *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

In this case, the magistrate terminated Doe's parental rights on the ground of neglect, I.C. § 16-2005(1)(b).[2]  Idaho Code § 16-2002(3) defines "neglect" in two ways.  First, neglect is defined as any conduct included in section 16-1602(25).  I.C. § 16-2002(3)(a).  Pursuant to I.C. § 16-1602(25), a child is neglected if he or she "is without proper parental care and control, or subsistence" or if the parents "are unable to discharge their responsibilities to and for the child."  Second, neglect is defined as situations where the "parent(s) has failed to comply with the court's orders in a child protective act case or the case plan, and reunification of the child with his or her parent(s) has not occurred within the time standards set forth in section 16-1629(9)."  I.C. § 16-2002(3)(b).  The time standard established by I.C. § 16-1629(9) is defined as when "a child is placed in the custody of the department and was also placed in out of the home care for a period not less than fifteen (15) out of the last twenty-two (22) months from the date the child entered shelter care."  In this case, the magistrate found neglect pursuant to both definitions.

## A.  Neglect Under Idaho Code § 16-2002(3)(a)

In determining that Doe neglected B.N. pursuant to I.C. § 16-2002(3)(a), the magistrate considered and analyzed the following factors:  (1) the events leading to shelter care; (2) the appropriateness of the home;  (3) Doe's progress in counseling; (4) her visitations with B.N.;

---

[2]     Idaho Code Title 16, Chapters 16 and 20 have been amended and renumbered; however, this opinion utilizes the language and numbering in effect at the time of trial.

(5) her employment; (6) foster care improvements; and (7) Doe's compliance with the case plan. Based on these factors, the magistrate concluded that Doe neglected B.N. On appeal, Doe claims that the magistrate erred by granting the Department's petition to terminate her parental rights to B.N. However, Doe does not challenge the magistrate's factual findings. Doe appears to only challenge whether the factual findings supported the magistrate's legal conclusions.

The magistrate made several factual observations in its memorandum decision, later also incorporated into the findings of fact. First, the magistrate found that a physical altercation between Doe and Father in July 2011 resulted in the removal of B.N. from Doe's care. A court may consider the events resulting in the child being placed in foster care when determining whether there was neglect. *In re Doe*, 152 Idaho 953, 957, 277 P.3d 400, 404 (Ct. App. 2012). At the termination hearing, Doe testified that she and Father regularly fought from December 2010 to March 2012. One day at the end of July 2011, Doe and Father engaged in a fight that became physical. The domestic dispute occurred in front of B.N. and B.N. became physically involved in the fight when Father ripped the child from Doe's arms and left the motel. Father took the child to Grandmother's place of work. Grandmother testified that when Father dropped B.N. off at her work, Father's face was badly scratched, his shirt was torn, and he only wore one shoe. Additionally, she testified that B.N. only wore a diaper that was halfway coming off.

Second, the magistrate found that "[d]espite having known that maintaining safe and stable housing is a primary goal of the case plan, [Doe and Father] never obtained a residence of their own where they might have reunited with B.N." The record demonstrates that at the time B.N. was taken into foster care, Doe lived in a motel. Thereafter, in April 2012, Doe and Father rented a house which Doe testified was not suitable for a child. She stated, "It was pretty bad there. We were fighting all the time, and we were using all the time, and I think that was the worst part of our use." B.N.'s guardian ad litem and Doe's social worker attempted numerous times to visit Doe at that house, but no one was ever home. Doe left that house on May 19, 2012, as a result of being arrested and incarcerated for probation violation. Following her incarceration, she immediately enrolled at the Walker Center until completion on August 2, 2012. Thereafter she and Father moved in with a friend, where she resided as of the date of trial. The friend's residence was a five-bedroom house that was allegedly drug free. Doe paid rent to stay at the friend's house, but was behind in her payments at the time of trial. Additionally, Doe

5

testified that she and Father anticipated having their own residence within one and one-half months after trial. Based on the alleged stability of the friend's residence, Doe testified that she felt she fulfilled the case plan's requirement to maintain safe, stable, sanitary, and drug-free housing.

Third, the magistrate found that drug use and domestic violence were two of the primary reasons that led to the petition for termination. The magistrate stated that "[e]ven after the child was placed into foster care, [Doe and Father] continued to use controlled substances and fight with each other for many months." Additionally, the magistrate found that "[Doe] acknowledged that she failed to complete the required counseling programs in a timely manner, and was extremely honest when she admitted that she 'went off the grid' and continued using drugs until approximately July of 2012." Evidence was presented at trial demonstrating Doe's efforts to receive treatment and counseling for substance abuse, domestic violence, and parenting skills. After the initiation of the case plan, Doe attended one class of Lifestyle Changes in 2011 and then "dropped out." In April 2012, she attended the Walker Center for five days and then "walked away from it." She returned to the Walker Center after her period of incarceration and successfully completed the program one year after B.N. entered foster care. Thereafter, she attended intensive outpatient treatment with Lifestyle Changes and completed the treatment in November 2012. As of the trial date, she was involved in follow-up care with Lifestyle Changes. In January 2013, Doe began attending a domestic violence course, a parenting skills course, an aftercare course, and drug counseling. As of the time of trial, Doe was attending these classes and anticipated graduating from them in April or May 2013. Thus, to her credit, Doe has made recent attempts to receive treatment and counseling for her problems. However, as will be discussed below, Doe's actions during and following treatment demonstrate that the success of her treatment is somewhat suspect.

Fourth, the magistrate found that Doe "refused to take the majority of the weekly UA's that were required by the case plan." Testimony at trial established that Doe failed to comply with drug testing requirements. From the initiation of the case plan (August 2011) to her arrest for probation violation (May 2012), Doe was scheduled to take three hair follicle drug tests. She took two of them and both tests showed positive results. Doe was also required to take weekly UAs, but she failed to submit to a majority of the tests. Doe testified that she was using drugs during that time and had not addressed her problems yet. From her completion of treatment at

6

the Walker Center (August 2012) to the date of trial (February 2013), Doe was scheduled to take thirty-six drug tests. She took five of them and all showed negative results. However, after her completion of treatment at the Walker Center in August 2012, Doe admitted to collecting prescription drugs from several pharmacies and providing the drugs to individuals who threatened to harm her. After being confronted, Doe contacted the pharmacies and informed them to cease providing her with prescription drugs even if she produced a prescription. Additionally, on October 22, 2012, Doe reported to her probation officer and the probation officer requested a drug test. When the probation officer went to his office to get the drug test, Doe fled. Based on these actions, the magistrate concluded that "the parents knew they were supposed to take the UA's, but they did not want to take the UA's because they were probably still using controlled substances."

Fifth, in regard to visitations with B.N., the magistrate found, "[i]t appears that this is one part of the case plan that [Doe and Father] tried to comply with on a consistent basis." However, the record indicates that Doe struggled complying with visitation rules as well. A CPS employee who supervised the visitations testified that at the beginning Doe frequently arrived late to visitations. Later on, the employee testified that there was "difficulty" with Doe showing up at all to the visits. In all, Doe missed eight of the seventy-nine visits unexcused. Doe testified that she missed some of the visits because she had an outstanding warrant for her arrest or she was incarcerated. Moreover, Doe testified that she attended some of the visits while under the influence of drugs. Nonetheless, the employee testified that Doe interacted appropriately with B.N. during the visitations.

Sixth, the magistrate found that the "information clearly shows that [Doe and Father] have not demonstrated a commitment to obtain financial stability during the eighteen or so months the case plan has been in effect." The record demonstrates that Doe was unemployed at the initiation of the case plan and remained unemployed for a year. In September 2012, Doe obtained employment as a cashier and a waitress at a restaurant. At the time of trial, Doe was employed at the restaurant making approximately $250 per week in tips and her paycheck amounted to $80 every two weeks after child support.

Seventh, the magistrate found "based upon all the testimony provided that B.N. is doing extremely well in foster care, with stability and consistency being provided to him." At trial, B.N.'s foster mother testified that B.N. initially was not talkative and would often have temper

tantrums and nightmares. As he became accustomed to the family, B.N. became very talkative and active. Additionally, his nightmares and temper tantrums calmed down and B.N. heeds his foster parent's verbal corrections. Moreover, the foster parents allow B.N. to have regular contact with his maternal grandfather. The grandfather testified that B.N. is well cared for and is receiving a good home. The grandfather also testified that Doe "probably" could provide a stable home for B.N. if she addressed her drug problem, but he did not believe she had done so as of the time the termination trial.

Eighth, the magistrate made a factual finding in regards to compliance with the case plan. A person's failure to comply with a case plan can be evidence supporting neglect under I.C. § 16-2002(3)(a). *In re Doe*, 151 Idaho 356, 364-65, 256 P.3d 764, 772-73 (2011). In the instant case, the magistrate found:

> [T]he evidence was clear, convincing and mostly uncontested that [Doe and Father] failed to put forth any effort to work the case plan for the first year the child was in care. Since then, they have started putting forth some effort to address the identified child protective issues, but as of the time of trial, they still had not fully completed the terms of the case plan sufficient enough to have the child returned to their care on even a temporary basis.

The case plan contained specific goals Doe needed to complete in order to obtain reunification, including: (1) addressing substance abuse issues; (2) maintaining appropriate housing; (3) obtaining financial stability; (4) receiving treatment for domestic violence issues; and (5) satisfying the requirements of legal issues. To show her compliance, Doe was required to submit documentation and verification of her class attendance to the Department. The record demonstrates that Doe has shown a complete disregard for her case plan. Doe admitted that she failed to comply with the case plan during the first year. Following her arrest and subsequent substance abuse treatment, Doe continued to disregard her tasks outlined in her case plan. She failed to submit to regular drug tests, failed to obtain stable housing, failed to submit a budget, failed to comply with the terms of her probation, and failed to submit any documentation or verification of her class attendance to the Department. However, during the termination trial Doe submitted as exhibits a letter from her employer indicating that she was working, a letter from her drug counselor indicating that she was receiving drug treatment and attending classes, and the results of a recent negative drug test.

8

On appeal, Doe argues that she "has and is addressing her substance abuse problem through treatment, she has and is resolving her legal problems stemming from criminal charges, she has obtained and maintained a stable home environment, and has obtained and maintained legitimate employment." However, we conclude that substantial and competent evidence supports the magistrate's finding of facts. As discussed above, pursuant to I.C. §§ 16-1602(25) and 16-2002(3)(a), a child is neglected if he or she "is without proper parental care and control, or subsistence" or if the parents "are unable to discharge their responsibilities to and for the child." Doe's failure to overcome her drug issues, comply with probation, obtain suitable housing, and obtain financial stability demonstrates that she is unable to discharge her parental responsibilities and is unable to properly care for B.N.

This holding is consistent with Idaho case law. In *State, Dep't of Health & Welfare v. Doe*, 145 Idaho 662, 182 P.3d 1196 (2008), the Idaho Supreme Court held that a mother neglected her children based on an analysis of similar factors present here. In that case, after the children were taken from her home, the mother continued to use drugs and failed to comply with her case plan. Eventually, the mother violated her probation and was arrested and incarcerated for a period of time. Upon her release, the mother started attending out-patient counseling, submitted to drug tests, and obtained employment. Nonetheless, the magistrate terminated her parental rights, finding that Doe's recent compliances with her case plan were also necessary requirements of her probation and that her efforts fell short of reunification. The Supreme Court found substantial and competent evidence supporting the magistrate's decision and determined that the mother's efforts to comply with her probation and case plan for the six months prior to the termination hearing were insufficient. *Id.* at 665, 182 P.3d at 1199.

The Department points to several cases to support its argument that termination was proper. In *In re Doe*, the Idaho Supreme Court determined that termination of a father's parental rights was supported by substantial and competent evidence. In that case, the magistrate found that a father neglected his children based, in part, on noncompliance with his case plan. In that case, Father failed to obtain stable housing, failed to complete parenting and domestic violence classes, and failed to complete out-patient treatment related to alcohol abuse. Additionally, Father committed an act of domestic violence in the presence of his children. In affirming the magistrate's decision, the Supreme Court stated "[t]he most apparent fact supporting this finding is Father's commission of an act of domestic violence in the presence of his children." *In re*

9

*Doe*, 151 Idaho at 365, 256 P.3d at 773. The Court also noted that Father's failure to comply with his case plan prior to the initiation of the termination proceedings supported a finding of neglect. *Id.* at 366, 256 P.3d at 774.

The Department also points to *Idaho Dep't of Health & Welfare v. Doe*, 151 Idaho 498, 260 P.3d 1169 (2011). In that case, the magistrate found that the mother failed to obtain a stable home, failed to maintain financial stability, failed to attend regular therapy sessions, failed to complete substance abuse treatments, failed to demonstrate adequate parenting skills, and failed to provide the Department with verification of her attendance at Narcotics Anonymous. The Idaho Supreme Court affirmed the magistrate's decision to terminate, stating, "[t]he trial court explicitly noted and applied the clear and convincing standard, and the trial court's findings are supported by the substantial and competent evidence set forth above." *Id.* at 505, 260 P.3d at 1176.[3]

In sum, although there is evidence that Doe has made recent progress in completing her case plan by attending various classes, there is also substantial and competent evidence supporting the magistrate's finding that she neglected B.N. as defined by I.C. § 16-2002(3)(a).

---

[3]    In her brief, Doe points to multiple cases that support the proposition that failure to complete drug rehabilitation alone does not provide a basis for termination. For example, Doe argues that the instant case is "remarkably similar" to *State, Dep't of Health & Welfare v. Doe*, 133 Idaho 826, 992 P.2d 1226 (Ct. App. 1999), *implicitly overruled on other grounds*; *Bach v. Bagley*, 148 Idaho 784, 229 P.3d 1146 (2010), *as recognized in Idaho Dep't of Health & Welfare v. Doe*, 150 Idaho 752, 250 P.3d 803 (Ct. App. 2011). In that case, the mother's reunification plan consisted of two parts--the mother's compliance with the terms and conditions of her probation, and her assumption of various parental responsibilities. The mother violated her probation by using drugs, failing to abide by curfew, and failing to attend drug treatment sessions. Additionally, the mother was unable to assume her parental responsibilities by failing to obtain stable housing, failing to participate in skill classes, and by failing to obtain stable employment. Accordingly, this Court determined that substantial and competent evidence supported the magistrate's finding of neglect. *Doe*, 133 Idaho at 831, 992 P.2d at 1231. In the instant case, Doe argues that the foregoing case stands for the proposition that the magistrate cannot find neglect based solely on drug addiction. Nonetheless, the magistrate in the instant case, much like the magistrate in the foregoing case, did not base its decision solely on Doe's drug addiction, but instead based its decision on a combination of factors, including Doe's failure to adhere to probation and the case plan.

Along the same vein, Doe also points to multiple cases that support the proposition that incarceration alone does not provide a basis for termination. However, our review of the record indicates that the magistrate did not terminate Doe's parental rights based on incarceration alone. Indeed, the magistrate does not even consider Doe's incarceration as a factor in its determination of neglect.

Further, "this Court is not in a position to reweigh the evidence and 'defer[s] to the trial court's unique ability to accurately weigh the evidence and judge the demeanor of the witnesses and take into account the trial court's superior view of the entire situation.'" *In re Doe*, 151 Idaho 356, 367, 256 P.3d 764, 775 (2011) (quoting *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007)). Therefore, we conclude that the magistrate did not err in terminating Doe's parental rights pursuant to I.C. § 16-2002(3)(a).

**B.     Neglect Under Idaho Code § 16-2002(3)(b)**

The magistrate also found that "it is undisputed that B.N. has been in foster care continuously since August of 2011--almost eighteen months at the time of trial. It is also undisputed that the parents have not completed the case plan sufficiently to have the child returned to their care during that time period." Accordingly, the magistrate found grounds for termination pursuant to I.C. § 16-2002(3)(b). As discussed above, substantial and competent evidence supports the magistrate's finding that Doe failed to comply with the case plan. Doe admitted to noncompliance with the case plan during the initial first year. However, even after the first year, Doe still failed to comply with the case plan. As discussed above, Doe's case plan required her to address her substance abuse issues, maintain appropriate housing, obtain financial stability, receive treatment for domestic violence issues, and satisfy the requirements of legal issues. As to addressing her substance abuse issues, as of the time of trial, Doe had failed to submit to regular drug tests. Doe claimed she failed to submit to the drug tests because her work schedule did not allow it. However, based on Doe's post-treatment actions of distributing prescription drugs and fleeing from a drug test, it is evident that Doe did not submit to the drug tests because she had yet to overcome her substance abuse issues.

Additionally, Doe failed to maintain stable housing during the period of the case plan. At the beginning of the case plan, Doe lived in various motels following which she resided at a house that she testified was not suitable for a child. As of the time of trial, Doe lived with friends in a house and testified that her housing situation was "temporary." As to Doe's financial stability, she obtained employment in September 2012 but, as of the time of trial, was only making eighty dollars every two weeks after the deduction of child support.

Doe started taking domestic violence classes in January 2013 and, as of the time of trial, was still enrolled in the classes. Although she has shown progress in enrolling and attending the

classes, she failed to complete the classes during the first eighteen months of the case plan. Nonetheless, she testified that she expected to graduate from her classes in April or May of 2013.

Finally, as of the time of trial, Doe was failing to comply with the terms of her probation. Doe's probation officer testified that Doe violated her probation on two occasions during the span of the case plan. The first violation was a result, in part, of Doe's continual drug and alcohol use. The second violation was a result of Doe's failure to complete treatment at the Walker Center on her first attempt. The probation officer also testified that "[a]t this time she is in danger of being violated for failure to submit to drug and alcohol testing as required by the probation department and her treatment program."

Based on the foregoing, we conclude that substantial and competent evidence supports the magistrate's finding of neglect pursuant to I.C. § 16-2002(3)(b). Accordingly, the magistrate did not err in finding grounds for termination pursuant to this statute.

## C.    Best Interest of the Child

The magistrate found that termination of Doe's parental rights was in the best interest of B.N. In making this determination, the magistrate weighed B.N.'s need for permanency and Doe's fundamental liberty in maintaining her relationship with her child, and concluded that "the child's need for permanency outweighs any statutory preference for maintaining the family unit in this case." The magistrate based this conclusion on the facts discussed above, as well as the opinion of case workers and the chances Doe would be reunited with her child.

The magistrate recognized that the social worker and other service providers all testified that termination of Doe's parental rights would be in the best interest of B.N. At trial, the social worker testified that termination of Doe's parental rights was in the best interest of B.N. because B.N. needed stability. She testified that Doe would not be able to complete her case plan for an additional "six to eight months minimum, and [B.N.] shouldn't have to wait that long to have a stable home." Additionally, B.N. had developed a strong bond with his foster family.

The magistrate also found that "the chances of reunifying [Doe] with the child in the immediate future would be very remote even if additional time was allowed." The magistrate recognized that Doe failed to complete all the terms of the case plan and only started to work on her domestic violence issues in January 2013, seventeen months after the initiation of the case plan. Based on all the evidence presented at trial, the magistrate concluded that:

> The [parents'] apparent continued instability, combined with her admitted placement of their own wants above the child's needs (using for months after the plan was in place while not doing anything to try and reunite with the child) convinces this court that the parents would probably have difficulty providing long term stability for the child if given another opportunity to do so.

Based on the foregoing, we conclude that the magistrate properly considered the evidence before the court and determined the termination was in the best interest of the child. In *In re Doe (2013-05)*, __ Idaho __, 306 P.3d. 230 (Ct. App. 2013), this Court was faced with a similar issue in deciding whether termination was in the best interest of the child in light of the mother's recent progress with her case plan. In that case, the magistrate considered the mother's history of drug abuse, her failure to comply with her case plan until the petition for termination was filed, her recent progress in the months prior to the termination trial, and the child's stability in foster care and determined that termination was in the best interest of the child. We affirmed the magistrate's decision, determining that the finding was supported by substantial and competent evidence.

Similarly, in the instant case, we determine that the magistrate's finding is supported by substantial and competent evidence. It is uncontested that Doe failed to even attempt to comply with the case plan until the months prior to the termination hearing. Additionally, as discussed more fully above, the record demonstrates that Doe is still struggling to overcome her drug addiction. Moreover, B.N. is doing well with his foster family and allowing the family to adopt B.N. will provide him with the stability, consistency, and permanency he needs. Accordingly, we conclude that the magistrate did not err by finding that termination of Doe's parental rights was in the best interest of B.N.

## III.

## CONCLUSION

Substantial and competent evidence supports the magistrate's finding of neglect under I.C. §§ 16-2002(3)(a) and 16-2002(3)(b) and that termination was in the best interest of B.N. Therefore, the magistrate's order terminating Doe's parental rights to B.N. is affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**